And that patent is contemporaneous with Riley's. So I submit that there simply is no teaching this preventive precipitation with EDTN. I stand over my time, Your Honor, and I thank you for your attention. Thank you, and we thank both counsels. Case is submitted. We'll hear argument next in number 2012-1184, NUCLIMATE AIR v. AIRTEX MFG. We're done, Your Honor. I apologize. Take your time to get settled there. Thank you, Your Honor. I appreciate that. Sure. I think I'm ready to go. I just need a glass of water. Sure. You can bring the pitcher over there in case you might need something during the course of the argument. Thank you, Your Honor. Just don't knock it over. The consequence is going to be awkward. I'm sure that's going to cost me my wallet. No. Go ahead. May it please the court. The district court erred by determining at the summary judgment stage that the Q360 induction unit assembly lacks, does not satisfy literally or equivalently the four mixing chambers of claims 15 and 18. Now, so it's important everybody agrees that mixing sections form mixing chambers. So the sole predicate for the district court's finding was the term chamber. That's it. A chamber, a mixing chamber is a space on the side of the induction unit assembly which mixes primary air and return air. Each side, what they refer to is their so-called four-sided square mixing chamber, is a mixing chamber. Each performs the exact same function as a claim mixing chamber. It mixes primary air and return air on that side of the induction unit assembly. Now, I look back here, you know, I've got my part of the claim, the 867 patent which is referenced here in column two of the 353 patent. And you say that that was part of the priority, I guess, and that the improvement was having four induction units instead of two induction units. And I look back at the 867 patent, figure two, and the unit there is exactly the same unit, exactly the same unit as is described here in the 353 patent. So there seems to be some significance to having four of these separate units rather than two. Am I misreading the patent in that respect? Your Honor, they're interconnected. And, well, let's start with this. The 867, they've never raised any issue that prior art precludes a finding or narrows the scope of the claims, literally or equivalently. They bear the burden on prior art issue with respect to- You mean I can't look at it? No, Your Honor, I'm not suggesting that. Well, I did look at it, but so try to answer the question. I apologize, Your Honor. The 867 doesn't come into play for this simple reason. It does not create a vertical flow pattern on each of four sides which is going to create a square with the center return. That is the key feature. So you said exactly the same, right, in the two patents? Pardon me? The units, the depicted units, the induction units, are exactly the same in the two patents, in the 867 and the 353, correct? Correct. Right. And you said that the 353 was an improvement because it had four of those instead of two, right? Your Honor, I don't believe that we limited it to, what we're saying is four interconnected units. We weren't saying that, for example, we weren't saying that the only type of induction unit is what's disposed in 867. Granted, we definitely said that four interconnected, which is going to create a four-way blow pattern, vertical, on each of the four sides was important. I thought your distinction of the 867 was that it had the units at a 45-degree angle instead of being vertical from the ceiling. That's certainly one distinction. And yet, even if one gets past that distinction, one still has to deal with, it seems to me, the problem that Judge Dike has raised, which is that the 867 patent does discuss the units, the two units, as individual units as opposed to having an open chamber, such as in the accused device, and that's what troubles me about the way both the 867 and the patent in suit characterized the operative term, the chamber. Will the 867, as well as the 353, specifically say that that is one example of an induction unit? Nowhere does the 867 or the 353 limit it to the particular structure disclosed. And in fact, if you look at the intrinsic evidence, which I'm sure this court has, you'll see that the very use of the term chamber in the 353 patent, you have it, for example, in connection with all of the four mixing chambers, 38, and room 16, which the 353 patent specifically describes as an enclosed space. So under plaintiffs in the district court's construction, room 16 is a chamber. You have free and direct communication between each of the four mixing chambers, 38, and the 353 patent in chamber 16 without any physical structure at the point of juncture of those two spaces, which in any way restricts or retards airflow. What plaintiffs are trying to do in this appeal, they're advancing the construction of the term chamber, which would require a physical structure be present at the juncture of each of their sites. Let me ask you this. Suppose instead of a four-sided device, you say the four-sided device with no barriers between each of the sides is still a four-chamber device. No physical barriers, right? Right, all right. Now, suppose you had a hexagonal device with six sides. Would that have six chambers as you see it? It would depend. If high-pressure primary air at high velocity was streaming down all four sides, or excuse me, all the sides of the hexagon, precluding any type of lateral movement between each of those sides, yes. That'd be six chambers. Correct. And if it were circular? Circular, that definitely presents it. How many chambers does that have? It depends, once again, on the flow patterns. You're right. Suppose there are, well, go ahead. I don't want to interrupt you. Give me your answer. Okay, that is a more complex question, but we're not dealing with that issue here. We have four sides turned in a 90-degree angle. There's no evidence that the functional level, and what they're trying to do is put a physical structure in each of the sides. For example, if you take a look at the physical structure in the induction units between plenum chamber 48 and the mid-correspondent mixing chamber 38, that's a thin wall plate which they both chambers share. It has a plurality of openings and nozzles to facilitate movement. So even if you were to acquire some physical structure at each of the corners, it could be a frame-type structure with a huge opening in it where it could go. If it was permitted under the various flow conditions, it could flow from one side to the other. And in fact, there's no evidence in this record that the functional level of the closed- It could flow from one side to the other, from one separate unit to the other. That's the problem. And we have that. I'm sorry, maybe I didn't understand your question. Well, what I'm saying is that what this patent contemplates is four induction units, separate units. They may be interconnected. The air may flow from one to the other, but the structure is four separate units rather than a single structure, which is what the accused device seems to be. Your Honor, both experts agree that nothing in Claim 15 requires end walls in the induction unit. I was assuming that. So if you interconnect those at the point of junction, there's going to be no physical structure whatsoever. You're going to have- So we're not talking about- These are purely apparatus claims. We're not talking about the process by which the product's formed or the method. We're talking about the actual unit. The induction unit assembly is a fully formed device. So you would have- They clearly have four interconnected outer walls. They have a substantially square coil, and they admit it down below that that coil defined an inner return chamber and then separated their so-called square mixing chamber from that, and air freely flows between those two chambers. Now, all of a sudden, on appeal, that inner return chamber becomes part of their mixing chamber because we submit that there's no evidence that the functional level of enclosure between each of their adjacent sides of their so-called square mixing chamber is less than the functional level and enclosure of two chambers they admitted existed in their own product where air was free to flow by their own emissions from one chamber to another. Let me ask you a slightly different question. Looking at the prior art here, I take it that, for example, and I think the 867 patent has a description of the prior art as including it saying it was known to provide induction units and employ the Venturi effect of mixed together both return air from the building and primary air, which is the function that is performed by your patented device. What did your patent add to the prior art? Your Honor, I'll be happy to answer your question, but just so there's no waiver issue here. Validity's not an issue. No, I understand, but in order to understand what the claims mean, it's sometimes important and useful to understand what the incremental contribution is of the patent so that you see what's important and what's not. Oh, I understand, Your Honor, and I just want to make that clear on the record. No, it's clear on the record. I understand that. Okay, Mr. Mills, if you look at his declaration, and I don't know if it's in the appendix, but it's in the record, and I may be relying upon something outside the appendix, okay? So I just, he explains, he'd been in this business, this is one of the plaintiffs, been in this business for some 35 years, and they weren't able to solve the problems with properly heating and ventilating classrooms. Okay, okay, but what exactly was it about the patent? I'm trying to get there. Sorry, Your Honor, and I didn't get there fast enough. Here's what it is. Four-way blow with the center return. You get four patterns of air going, and he's now all four sides, and you have the return room air going in. Mr. Miller readily admitted in his deposition that's an important feature, and in fact, they stressed it. We argued that down below in our brief. We did, because it is important. And that is, well, except that that leads me back to Judge Dyke's original question about the 867. Why doesn't the 867 do exactly that, other than the horizontal versus 45 degree angle? I'm sorry, Your Honor. I didn't mean to interrupt. It's two as opposed to four, but they're both, you could have two of them set next to one another. It has to be. That's the key. That doesn't solve it. That doesn't solve the problem. In these classrooms, you're gonna find two of the Q360s. You're gonna find two of the Q4s. You would have to have eight of the other ones to achieve the same result. Well, four. Four, excuse me, I'm sorry. So you're gonna have a lot more distractions going on. And remember, they conceded the issue of validity. They're not appealing that issue. No, I understand. This is not about validity. And Your Honor, the prior art, I just wanna make this point, because I wanna go to the equivalence issue. Now, their entire case on equivalence is based on attorney argument. They haven't pointed this court to any record evidence which would allow this court in its de novo review to find that the Q360 lacks at least the equivalent of the four mixing chambers. Prior art, they never raised it. Prosecution history establishment doesn't exist. The claim is on them to establish doctrine of equivalence. The burden is on you. Your Honor, but under RF Delaware versus Pacific Keystone, which I actually was involved in that case, this court made it very clear that it is the burden of establishing on the doctrine of equivalence that the prior art would preclude a finding of equivalent infringement. They not only bear that as the movement in summary judgment, they bear that at trial. Now. It's not their argument. Pardon me? I don't think that's their argument. No, their argument isn't that. It's four versus one. And this is four versus four. I would poorly agree with them if they had a triangle. Okay? Then, yes. They have only three. They don't have four. They don't have that four to four correspondence that they have here. Yeah, well, we're getting back to the importance of four units. And units is just a portion of an assembly. What do they say? Complete, stand-alone unit. That is directly inconsistent with the patent. We put in our apply brief, figure two. Two big black boxes in the induction units 32 and, no, excuse me, 35 and 34. To indicate that there was a blockage in those. Air cannot get to either of the two induction units when you have a blockage because they depend directly on those induction units. And just so it's clear, their expert and our expert agrees that nothing in the claims requires that the induction units be spaced. That there be any piping connecting them. Rather, the end walls of each of the induction units can be removed and connected directly. That is going to create an indistinguishable structure from what they have. Okay, why don't we hear from your opposing counsel. We've consumed your rebuttal time with some of our questions, so we'll give you two minutes. Thank you, I appreciate it. Good afternoon, your honors. May it please the court. Excuse me just a moment, Ms. Thompson. If you could add two minutes to Ms. Smiley's time. Thank you. Okay, thank you. I'm gonna start first with the induction unit. Granted, limitations from the specification cannot be imported into the claims, but there's no suggestion anywhere in the patent itself or in the prior art patent incorporated into the patent that the induction units are anything other than a freestanding unit that is connected together. So even though the district court did not define induction unit, I believe that the court here, given that the issue was fully briefed below, can hold that the induction unit has to be a complete standalone unit as is depicted in the figures of both the patented issue and the prior art patent. Counsel's argument that the induction units depend on each other is really a red herring. That is a function of how they're connected. If you took any one of the induction units disclosed in the patent and connected them directly to the primary air source, they would function as an induction unit and induce air. I don't think that- Go ahead. I don't think there's any suggestion in the patent that an induction unit can be a wall or a space within one larger square construct that only has four walls and an interior coil. Well, but let's move. Assume you're right about literal infringement. Why isn't this a case for the application of the doctrine of equivalence? If your opposing counsel is correct, that the devices, the accused device, will work exactly the same, whether you throw some walls in between the chambers with a few holes in them, but enough to create different chambers, versus whether you take those walls away. Well, I disagree with that both as a legal and a factual matter. The cases cited or the prior precedent of this court indicates that the doctrine of equivalence has to be applied to individual elements of the claim, not the invention as a whole. And for example, in the Dolly case, you can't use the doctrine to ignore claim limitation. Well, but you always are, quote, ignoring a claim limitation. Whenever you say that literal infringement is not satisfied, the doctrine of equivalence is. That's what doctrine of equivalence does, which is to say, we don't have to satisfy literal infringement. Therefore, you're taking some claim limitation and you're saying, well, it doesn't have to be regarded. So what is it about this case, factually, that says to us that that machine does not work the same because it lacks the four walls at the corners? Well, first of all, at A914 of our expert's deposition, page 66, counsel asks at line 12, these four sides in the Q360 mixing chamber are going to give you a four-way blow, correct? And the expert answers, it could give you a four-way blow depending on the configuration of the grill that is applied to it. Question, remove the grill, okay? Is it going to give you a four-way blow without the grill, correct? And then I object to form. And the expert says, I must deny that. It would all blow straight down. It wouldn't be a four-way blow. The blow is developed by the grill or diffuser. So you have the open box structure that's stuck in the ceiling and then an unclaimed element, in our case, the grill or diffuser, actually pushes out the four-way blow. I mean, if the doctrine of equivalence were to apply here to say that just because air flows down four walls, then the induction units themselves would pretty much infringe the patent, the single induction units, because the air is going to flow down the walls in those two as well. I mean, and counsel cannot simultaneously argue that the air is free-flowing everywhere and therefore we've admitted that a chamber can be free-flowing and then say there's no, that our four open walls act the same way as a chamber. I mean, I don't think anyone reading this patent in part of the function of having a published patent is to give the public notice of what's being claimed. No one looking at this patent would ever say that anything other than taking four separate induction units and connecting them in some manner would infringe the claim. I mean- Let me see if I can get at the question that's troubling me from a different route. Suppose I, let's hypothesize, and if this hypothesis is incorrect, tell me, but roughly speaking, that the difference between the patented device and the accused device is that at each of the corners in the patented device, there's some form of wall that creates these chambers and in the accused device, the only significant difference is that wall has been removed. Now, first of all, is that a fair, rough characterization of the differences between the patent and the accused device? No. And if not, why not? Ours, first of all, I realized that there was some question about removing the ends of the device and connecting them together, but I'm not even sure how you could do that because if you cut the ends off of four things, I don't think you could line them up in a square. You would have to kind of cut holes in the sides of one of them. You know, you would have one hole here, one with both sides cut off and holes there. I'm not- I may not be understanding the basic stuff in here because I had thought, let me go back to basics. I had understood the difference between the patent and the accused device to be that they're the same basic structure, but in one case, you've got the four sides are created, are turned into four separate discreet chambers by virtue of the inclusion of a wall between each of the four chambers. Is that a fair characterization of what the patented device has that makes those chambers discreet chambers? No, I think the patented device has discreet chambers because they're separate induction units that you're connecting together in some manner. So- But the reason that ends up mattering, I take it, is because if you have a separate induction unit, there's a wall at each end, right? Yes. And then when you put them all into the single device, you end up still with a wall at each of those four corners. Right, and induction can occur separately in each unit. It's each doing its own induction. Right, and that's why, that leads me to my question, which is suppose that you bought a device, which is the commercial embodiment of the patent, okay? And that device has started out with four separate induction units, and you put them all together into a square, and then you had walls at each of the corners, but then you, in setting up your proposed distinguishable device, pulled the four walls at the corners out. Would that device, when the walls were pulled out, operate differently from the device that's described in the commercial, the device described in the patent, and how? I'm not sure it's entirely in the record, but when you have one big space, the induction is occurring all through the space. So it's, you know, they're coming down and sucking up air in the middle. There aren't four separate openings, as are in claims 15, where the air is coming out. I mean- Each of these units is operating separately. Correct. From what you're saying, instead of operating as a single unit. Correct, and the patent even- Well, I don't think- If you had to start with four separate units and open the ends, they're still, each unit is still operating separately, right? I don't think it would operate separately. They'd have to operate together. Well, that's an important question, because if they would operate separately, just as they do with the ends put in, then that's a pretty good argument for Doctrine and Covenants being applicable, right? I think if they don't- In other words, they would be operating just the same without the end barriers as they would with them. No, they would be operating the- Differently. Either not operating at all. You said they'd operate differently, but I don't think Mr. Merrick's gonna agree with you on that point. And the question is then, what is there in the record that tells us that when you take those end barriers away, the device operates in a very different way? I think it operates in a different way because the patent is disclosing four induction units and four separate chambers. So you could, I think in one of the columns of the patent, it talks about you could have different sized nozzles in each of the induction units, and the air would flow faster on one than the other, because there's a separation between, even though yes, they can be connected and the air will flow through the top of them, they're each have a separate set of nozzles that's drawing the air out and then pushing it out through a separate opening. So are you saying then that, to take this example, that in your device, you would lose the advantage which the patented device has of being able to use, to that effect, differently sized nozzles? Your device doesn't have that advantageous feature, is that what you're saying? I don't. Or could not be adapted to have that advantageous feature? I don't think so because it's all one, I don't think it's in the record. When you say you don't think so, you think that your device could not be adapted to have that advantageous feature of the patented device? Correct, because it's all one open chamber. You don't have any enclosures that allow areas to be pressurized separately. And I agree with the court's note that the doctrine of equivalence allows you to satisfy a claim limitation without literally satisfying it, but it doesn't allow you to rewrite the patent. You know, I mean. That, in every single doctrine of equivalence cases, that's our task is to decide whether you're doing the A or B. And to say we can do A but we can't do B isn't really helpful in deciding whether this is an A case or a B case, right? Yeah, I mean, instead of using the term chamber, they could have used the term wall, they could have used, as they did of sections, they used air mixing section, primary air intake section, but they specifically used the term chamber. And the Venturi effect requires that you're pulling air or air is being pushed down, it goes through the nozzles, and because the nozzle is decreasing, in essence, the volume, the pressure changes and the air comes out faster. And at the bottom of the unit, and that's not affected by whether the adjoining walls are removed or not, right? I would disagree with that because first of all, the air tech made no showing whatsoever in opposition to our summary judgment motion that the blow is the same. I mean, basically our experts- I'm not talking about the accused ones. I'm saying in where you have these four separate units, figure eight, for example, the air is coming out where it's marked with 58, right? Yes. The interior air is coming in through 76 and the mixed air is coming out at 58, right? Correct. All right, and the fact that you removed those end walls, which don't seem to have a number in here, doesn't affect the way it operates, right? I would think that the- It's still a separate unit. Yeah, well, no. I mean, I don't think the wall without... I mean, it still was an induction unit whether you remove the walls or not, but- It's a separate induction unit. Correct, it is a separate induction unit and that's what's claimed. I guess, did that answer your question? Yeah. And here, I mean, the district court gave the term chamber its ordinary and customary meaning. I think whether or not a dictionary definition is used, a chamber is an enclosed space in common usage, whether it's a heart or not. There's no enclosure here whatsoever. Suppose, let's take a slightly different example. Suppose we had an invention which is designed to produce differential heating and cooling for a group of cubicles on an office floor. And the patent described the operation and explained why the different cubicles would all be able to be kept at a different temperature because of the clever aspect of some aspect of the device. All right, and then we discover, the accused infringer discovers that, hey, this thing will work even if you take the cubicle walls down. So that even though people have less privacy, they'll still be just as cool or as warm as they wanna be because the air coming down over their desk is gonna be unaffected by the walls. Now, do you think that in that kind of case, would you say that the accused system without the cubicle walls would be within the doctrine of equivalence of a claim to a system for warming the room where the system claims that the room has a number of different cubicles or chambers? It's difficult to answer without, I guess, seeing the scope of the claim. You could say that, well, there's a vitiation of the claim limitation to cubicles or to walls or chambers or whatever, but that wouldn't be very satisfactory, it seems to me. Because if the keeping is done in exactly the same way and the results are exactly the same, the walls between the cubicles become immaterial except to the privacy concerns of the workers, right? Well, I would question first, why is it in the claim then? I mean, if it's not necessary. They may have foolishly assumed without thinking through, you can answer the question. They may have foolishly assumed that they needed to put walls in just because people are normally comfortable in cubicles that have walls as opposed to wall-less cubicles. But does that disable them from making a doctrine of equivalence claim is the argument? I would think that he is somewhat different because he is something that's, it doesn't depend on the direction of- Well, it's air, hot air or cold air. Right, and it would eventually disperse through the entire room. Well, okay. All right, Mr. Merrick, two minutes. Thank you, Your Honor. Just two points, that's it. First of all, I wanna go back to your, buying the commercial embodiment and that question to Ms. Smalley. There is no evidence in this record whatsoever, I mean none, that there will be any difference in function, weight, or result, none. They spent their entire section on equivalent infringement in comparison of the Q360 to the Q4. They candidly admit on appeal, that's not relevant. They have no evidence. Remember, you have high pressure primary air at high velocity streaming down all four sides. There's no argument or evidence that air from one side can migrate to another side freely or that all of the evidence, there's the path of least resistance is unquestionably the open bottom end. Now, novel, different besides novel, there's no dispute that there's no claim limitation whatsoever on the different besides novels. I better speed up. But more importantly, they can do it exactly the same as we can. All you have to do is put different besides novels on each of their sides. They'll get the exact same result and the reason is this. In each of the preferred embodiments in the 353 patent, each of those induction units receive primary air at the exact same pressure. They're the exact same configuration. They have the exact same number of novels. So the air pressure in each of those plenum chambers is going to be exactly the same. And as a result, even if she claims that they have exactly the same in their plenum chamber, it doesn't matter, they'll get the exact same result. Differently sized novels have nothing to do with this case whatsoever. Their own expert wouldn't even support that testimony or that argument. Okay. May I please vote on this testimony? Thank you, Mr. Mayor. No, I don't think so. Any questions? Very well, we thank both counsel and the case is submitted. Thank you, Your Honor. And thank you, Ms. Connell. All rise. The Honorable Court has adjourned until tomorrow morning at 3 o'clock. Thank you.